**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, ) | Cause No. CR-11-140-BLG-RFC | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | **ORDER** | |
| ) | | |
| **RODRICK D. GANT,** ) | | |
| ) | | |
| Defendant. ) | | |
| _____ ) | | |

**INTRODUCTION**

Rodrick D. Gant was indicted by a Grand Jury on December 21, 2011 charging him with Conspiracy to Commit Robbery Affecting Commerce (Count I) in violation of 18 U.S.C. § 1951(a), Possession of a Firearm During a Crime of Violence (Count II) in violation of 18 U.S.C. §§924(c)(1)(A) and 2, and Possession of a Firearm by Person Convicted of Misdemeanor Crime of Domestic Violence (Count III) in violation of 18 U.S.C. § 1951(a). (TT 29,31).

On October 23, 2012, the jury found Rodrick Gant guilty of all three counts of the indictment. (TT 240). During the trial, Defendant raised the Motion for Acquittal under Rule 29 F.R.C.P, and he renewed the motion at the close of

1

evidence. (TT 140). This Court reserved ruling on the Rule 29 motion. (TT 154). Defendant has renewed his motion. The Court has reviewed the briefing, as well as the official transcript, and the Court concludes Defendant's motion must be denied.

## STATEMENT OF FACTS

Defendant engaged in a robbery plot with co-defendant Edwin Johnson. Government's Exhibit 10. Johnson had been dealing with undercover Alcohol, Tobacco, and Firearms (ATF) agents for a number of months and had worked out an agreement to put together a crew for a robbery. (TT 72). Johnson was friends with Defendant and recruited Defendant to participate. Defendant accompanied Johnson to a meeting with ATF agents. (TT 73-75). On November 29, 2011, Johnson contacted the ATF agent (UC 1, also known as Agent Forster) to make arrangements for the agent to meet Defendant.[1] (TT 72).

That day UC 1 picked Johnson and Defendant up on the west end of Billings. (TT 77). UC 1 asked if both Johnson and Defendant were interested in some work and they agreed to be contacted another time when there was work. Government's Exhibit 10. Defendant gave his telephone number to UC 1. Government's Exhibit 10. On November 30, 2011, Johnson met with UC 1 and

---

[1] Defendant is also referred to as "Stickman" in this case.

UC 3, another undercover ATF agent, and discussed a possible robbery opportunity involving drug proceeds. Government's Exhibit 11. At the meeting Johnson indicated that he would get Defendant to help. Id. Johnson agreed to contact UC 1 if he was interested in doing the robbery. Government's Exhibit 13. Johnson later contacted UC 1 asking what the "cut" was, and said he would need money for himself, "Stickman," and the driver. Id. He also stated that other than the split the robbery was a go. Id.

The plan told by UC 1 to Johnson was that they were going to meet a man looking to purchase cocaine from them. UC 1 told Johnson that the man would be traveling from Arizona to pick up the drugs. (TT 67). The man would be bringing a lot of money to pick up narcotics and he intended to then travel back to Arizona where he would sell the drugs for cash. (TT 67). There was never going to be any cocaine to sell to the man from Arizona. Instead, they were going to rob the man. (TT 67).

Johnson and Defendant met with the ATF agents later on November 30, 2011 at the undercover business of the ATF. Both men were armed, Defendant had a .40 caliber Springfield pistol that he showed UC 1; UC 1 also handled the gun. Government's Exhibits 16, 18; (TT 105-106). While meeting with the agents, Defendant and Johnson discussed their plan with the agents including their

intent to kill the "big dude" they were robbing, their plan to ditch the car and firearms, and their plan to leave the state. Government's Exhibit 16. Defendant twice asked if UC 1 had any gloves he could use for the robbery. (TT 107). During their exchange UC 1 asked Defendant several times if he knew what was going on and if he was okay with the deal made; Defendant replied that he knew and was good with it. (TT 81, 114). UC 1 told Defendant that he did not have to do the robbery. (TT 80- 81). UC 1 left the room and Gant and Johnson were arrested by ATF agents. (TT 116-17).

## STANDARD OF REVIEW

In considering a motion for judgment of acquittal, the Court must "determine if, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Carranza,* 289 F.3d 634, 641-42 (9th Cir.2002) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).[2] Circumstantial evidence and inferences drawn from it may be sufficient to sustain

---

[2] Alternatively stated, a Rule 29 motion may be granted "only if viewing the evidence in the light most favorable to the government, and granting to the government all reasonable inferences that may be drawn from the evidence, no rational trier of fact could find beyond a reasonable doubt that the defendant committed the crime." *United States v. Johnson,* 297 F.3d 845, 868 (9th Cir. 2002).

a conviction. *United States v. Reyes-Alvarado,* 963 F.2d 1184, 1188 (9th Cir.), *cert. denied,* 506 U.S. 890 (1992).

A judgment of acquittal should not be granted on any other grounds, or for any other reason, and the Court cannot substitute its own assessment of the evidence. *United States v. Affinito*, 873 F.2d 1261, 1264 (9th Cir. 1989) (defective indictment and jury instructions); *United States v. Torkington*, 874 F.2d 1441, 1445 (11th Cir. 1989) (prosecutorial misconduct); *United States v. Weinstein*, 452 F.2d 704, 713-715 (2d Cir. 1971) (credibility of a prosecution witness.)

In order for Defendant to be found guilty of conspiring to commit robbery affecting interstate commerce (Count I), in violation of 18 U.S.C. § 1951(a), the government must prove each of the following elements beyond a reasonable doubt:

>   (1) Beginning on or about April 2011, and ending on or about November 30, 2011, there was an agreement between two or more persons to commit robbery that affected commerce as charged in Count One of the indictment; and
>
>   (2) The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

In order for Defendant to be found guilty of possessing a firearm in furtherance of the conspiracy to commit robbery affecting commerce (Count II), in violation of 18 U.S.C. § 924(c), the government must prove each of the following elements beyond a reasonable doubt:

    (1)    The defendant committed the crime of conspiracy to commit robbery affecting commerce;

    (2)    The defendant knowingly possessed a Hi-Point Medal JHP, .45 caliber semiautomatic pistol, Serial Number X469753, and a Springfield Armory Model XD40, .40 caliber semiautomatic pistol, Serial Number US389998M; and

    (3)    The defendant possessed the firearm in furtherance of a crime of conspiracy to commit robbery affecting commerce.

Defendant only challenges the sufficiency of the evidence in establishing the element of interstate commerce in relation to Counts I and II. Defendant argues that the Government failed to provide adequate proof that the drugs, even though fictitious, affected interstate commerce.

It is well-established that the government need only show a *de minimis* effect on interstate commerce to fulfill the jurisdictional element of the Hobbs Act. *United States v. Panaro*, 241 F.3d 1104 (9th Cir.2001); *United States v. Atcheson*,

94 F.3d 1237, 1242 (9th Cir.1996) (concluding that *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), did not require proof of a "substantial effect" on interstate commerce in Hobbs Act prosecution, but that the continued use of "*de minimis*" standard was proper). "[A]n effect on interstate commerce is established by proof of an actual impact, however small, or in the absence of actual impact, by proof of a probable or potential impact." *United States v. Pascucci*, 943 F.2d 1032, 1035 (9th Cir. 1991). The Ninth Circuit has "consistently upheld convictions under the Hobbs Act . . . even where the connection to interstate commerce was slight." *United States v. Lynch*, 437 F.3d 902 (9th Cir. 2006). The standard is satisfied by showing either a direct or indirect effect on interstate commerce. *Id.* at 905.

## ANALYSIS

Defendant relies on *United States v. Peterson*, 236 F.3d 848 (7th Cir. 2001) in arguing that the government failed to meet the interstate commerce elements for Count I and II. In *United States v. Peterson*, 236 F.3d 848 (7th Cir. 2001), members of a gang robbed a marijuana dealer of thirty pounds of marijuana and $18,000 in cash. Gang members returned to rob the drug dealer and gunshots were fired. One of the gang member's shots went through the wall of a neighboring house, killing an occupant. *Id*. at 851. The government charged the

7

members of the gang with violating the Hobbs Act for both the completed robbery and the subsequent attempt. *Id.* In an attempt to prove the interstate commerce element of the Hobbs Act, a DEA agent testified that the bricks of marijuana were of a quality and quantity that would "normally" indicate that it was grown out of state. *Id.* at 854. On appeal, the Seventh Circuit held that without sufficient evidence that the marijuana involved in the case originated out of state, the government failed to prove an effect on interstate commerce. *Id.* at 856. The convictions were reversed.

There are several pertinent facts which distinguish this case from Peterson, 236 F.3d 848, 851 (7th Cir. 2001). First, unlike the drug dealer in Peterson, who was dealing marijuana in the state of Indiana, the drug dealer in this case was known to deal drugs through interstate commerce to be traveling from Arizona to Montana. As in Rodriguez, that is sufficient to meet the elemental requirement of interstate commerce under the Hobbs Act. United States v. Rodriguez, 360 F.3d 949, 956 (9th Cir. 2004). Second, this case involved cocaine and Peterson involved marijuana. The Ninth Circuit has recognized that "all cocaine originates overseas." *Rodriguez*, 360 F.3d at 956, citing *United States v. Marrero*, 299 F.3d 653, 655 (7th Cir. 2002).

In *United States v. Rodriguez*, 360 F.3d 949, 954 (9th Cir. 2004), the charges arose out of an undercover sting operation organized by the ATF in which defendants planned to rob a stash house where fictitious drug traffickers stored non-existent cocaine. The Court held that an "intended robbery of cocaine from narcotics traffickers is the robbery of a business," and there is no requirement that the government make the heightened showing under *Lynch*. *Id*. at 955-956; *See United States v. Lynch*, 282 F.3d 1049 (9th Cir. 2002). The Court went on to reason that drug trafficking is historically regulated by Congress and thus is distinguishable from robbery of an individual. *United States v. Rodriguez*, 360 F.3d at 956. The government need only to have proven that there was a plan to rob those engaged in drug trafficking to meet the interstate commerce element of the Hobbs Act. *See Rodriguez* at 956.

Because the trafficking of narcotics is a federally-regulated activity implicating interstate commerce, federal jurisdiction exists to apply the Hobbs Act to conspiracies involving the theft of cocaine from narcotics traffickers. *Id.* A conspiracy to steal cocaine alone suffices to establish a connection to foreign commerce, because, as other circuits have found, "all cocaine originates overseas." *Id.*, citing *United States v. Marrero*, 299 F.3d 653, 655 (7th Cir. 2002).

The fact that the narcotics and the money in this case were fictional has no bearing on the outcome of this case. The non-existent status of the target drug traffickers is inapposite. *Rodriguez* at 957. Impossibility is not a defense to the conspiracy charge. *Id.*; *See United States v. Brooklier*, 685 F.2d 1208, 1217 (9th Cir. 1982) (factual impossibility is not a defense to inchoate offense because "actual potential effect on interstate commerce was not a jurisdictional prerequisite for a conviction of conspiracy to violate the Hobbs Act"); *United States v. Bailey*, 227 F.3d 792, 797 (7th Cir.2000) ( "[T]he Hobbs Act criminalizes attempts as well as completed crimes, the government need not even prove that interstate commerce was affected, only that there exists a 'realistic probability' of an effect on commerce."). The government need not show "certainty of effect on commerce; a reasonable probability is enough." *Marrero*, 299 F.3d at 655. It is well-established that, for there to be federal jurisdiction, the government need not show that the actual criminal activity had an impact on commerce; rather, the government need only show that "the class of acts has such an impact." *Id.* (citing *Perez v. United States*, 402 U.S. 146, 153-54, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971)).

Defendant argues that because there was no testimony or evidence about where the cocaine came from and because there was never going to be any cocaine, the government did not establish the interstate commerce element. Based upon the requirements established by Ninth Circuit precedent, I find that the government was able to adequately establish during trial that Defendant's conduct met the interstate commerce elements for Count I and II.

Like the defendants in *Marrero* and *Rodriguez*, Defendant agreed to participate in a plan to rob a drug trafficker and he was aware that the trafficker was traveling from one state to another to complete the transaction. Because the trafficking of narcotics is a federally-regulated activity implicating interstate commerce, federal jurisdiction exists to apply the Hobbs Act to conspiracies involving the theft of cocaine from narcotics traffickers. *United States v. Marrero*, 299 F.3d at 655.

Furthermore, because of the Ninth Circuit's recognition that "all cocaine originates overseas," the government was not required to provide further evidence or testimony of where the cocaine would have originated. *See Rodriguez*, 360 F.3d at 956, citing *United States v. Marrero*, 299 F.3d 653, 655 (7th Cir. 2002).

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Rule 29 Motion for Judgment of Acquittal is **DENIED.**

Dated this 6th day of February, 2013.

*/s/ Richard F. Cebull*_____
Richard F. Cebull
United States District Judge